ALONZO W. DAVIS *vs.* HARRY R. COSHNEAR.

Cumberland. Opinion October 28, 1930.

336

*Frank I. Cowan,*
*Frederick R. Dyer,* for plaintiff.
*Berman & Berman,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, JJ. PHILBROOK, A. R. J.

STURGIS, J. At the trial of this action for deceit, the jury returned a verdict for the plaintiff. Exceptions to the refusal of the presiding Justice to direct a verdict for the defendant and to give requested instructions brings the case to this Court.

Upon the evidence, the jury were warranted in finding that, in March, 1929, two salesmen employed by the defendant, a stock broker with offices in New York, Boston and Portland, sold the plaintiff two hundred shares of the common stock of Likly Luggage Inc., a corporation which had acquired some of the assets of Henry Likly & Co., then in liquidation, but since 1840 manufacturers of high grade luggage at Rochester, New York. The stock was sold for $21 a share and payment was made in money and stocks of other corporations admitted on the record to be worth $4,200.

In making the sale, the salesmen represented that Likly Luggage Inc. was a going, successful concern which paid ten per cent dividends on its common stock, which had a book value of $35 or $40 a share. These representations were untrue.

Likly Luggage Inc., organized in 1928, purchased for $40,000 the patents, trade name, and certain machinery from Trustees liquidating Henry Likly & Co. A factory at Fitchburg was purchased for $100,000 and mortgaged for the full amount of the purchase price. Some new machinery was installed. Merchandise and raw material estimated to be worth $150,000 was acquired. Upon its books, the Corporation valued these assets at about $1,700,000 and, with debts of $240,000, showed net assets of $1,500,000 with 60,000 shares of no par value common stock issued and outstanding. Upon such inflated values, bearing little relation to cost and, as appears by this record, to actual value, the stock purchased by the plaintiff had a book value of only $25.

The Corporation never paid any dividends. It started to manufacture in its Fitchburg factory, put its stock into the hands of brokers for sale, but by March, 1930, was shut down with interest and taxes in default and its machinery sold at sheriff's sale. An attempt to compromise with its creditors was then being made.

There was no error in the refusal of the presiding Justice to direct a verdict for the defendant. The only evidence in the case came from the plaintiff and his witnesses, whose testimony convincingly proves that the plaintiff bought the stock in question, relying upon the representations of the plaintiff's salesmen, which were untrue, and, if it can be inferred that their falsity was unknown, they were of facts susceptible of knowledge, recklessly stated as of the salesmen's own knowledge and were the inducement which brought about the sale and injured the plaintiff. The question of the duty of the plaintiff to investigate and ascertain the truth, under the rule stated in *Richards* v. *Foss*, 126 Me., 413, was a question for the jury, upon which the defendant did not clearly prevail.

The defendant was liable for the false representations of his agents. *Leavitt* v. *Seaney*, 113 Me., 119; *Rhoda* v. *Annis*, 75 Me., 17. It was not necessary to prove that the salesmen knew that their statements were false. Even if they believed them to be true, as made, they might amount to fraud. *Richards* v. *Foss*, supra; *Mullen* v. *Banking Co.*, 108 Me., 498; *Banking Co.* v. *Cunningham*, 103 Me., 455; *Atlas Shoe Co.* v. *Bechard*, 102 Me., 197.

The requested instruction that the only representation to be considered by the jury was that the Corporation paid ten per cent dividends was properly refused. The request was based on the assumption that the plaintiff relied solely on that representation. His reliance is neither so limited in pleading or proof.

The Court's refusal to instruct the jury that there was no evidence that the plaintiff had been damaged and, failing to establish this element of deceit, could not recover, was not error. The facts proven furnished ground for fair and reasonable inference that, at the time of the sale of the stock, its value was substantially less than what it was represented to be. The difference between these values is the measure of damages in actions of deceit. *Wright* v. *Roach*, 57 Me., 600. The actual cost of plant, machinery, patents

and trade name, and the fact that no dividends were paid, could be properly considered in determining the value of the stock at the time of the sale. So also the subsequent shut down of the factory, default in interest and taxes, sale of machinery and compromise with creditors. Subsequent events in the history of the corporation were properly considered as throwing light back upon its previous condition. *Mullen* v. *Banking Co.*, supra, p. 505; *Hindman* v. *Louisville First National Bank*, 112 Fed., 931.

Nor can we accede to the defendant's contention that the statements of his agents as to the book value of the stock are mere puffing statements or selling talk and not actionable. The term "book value," as applied to finance, is defined as the value of anything as shown in the books of account of the corporation owning it. As applied to stock, it is the value as determined by the net profits or deficit of the corporation as shown by its books. Webster's New Int. Dict. At the trial, the parties used the term as representing the pro rata share in the net assets of the corporation, as valued on its books of account, represented by each share of stock issued. Considering the book value of the stock sold the plaintiff from this viewpoint or that of the lexicographer, we think the statements made concerning it were representations of facts of corporate record, directly affecting the value of the stock sold and material within the rule stated in *Braley* v. *Powers*, 92 Me., 203.

The last Exception reserved by the defendant has no more merit. The presiding Justice was requested to instruct the jury that "the fact that the defendant has not seen fit to offer a defense or testify in his own behalf should not be considered against him." To so instruct the jury would be to direct them to "disregard a fact existent, material and probative." The rule prevails in civil cases that the omission by one party to take the stand or offer evidence, which may be within his reach, to deny or explain evidence given by others, adversely affecting his rights or interests, may be regarded as conduct in the nature of an admission from which adverse inferences may be drawn. *Union Bank* v. *Stone*, 50 Me., 595; *York* v. *Mathis*, 103 Me., 67; *Howe* v. *Howe*, 199 Mass., 598, 599; *Attorney-General* v. *Pelletier*, 240 Mass., 264; Wigmore on Evidence, Sec. 289. 

*Exceptions overruled.*