**167 So. 87**

## STATE v. BISSO REALTY & INVESTMENT CO., Inc.

No. 33749.

Feb. 7, 1936.

Rehearing Denied March 9, 1936.

D. M. Ellison, P. H. Stern, and Charles J. Rivet, Sp. Assts. to Atty. Gen., for the State.

Lemle, Moreno & Lemle, of New Orleans, for appellee.

Monroe & Lemann and J. Raburn Monroe, all of New Orleans, amici curiæ.

HIGGINS, Justice.

The state of Louisiana instituted a summary action against the defendant, a domestic corporation, to collect additional corporation franchise taxes for the years of 1933 and 1934.

The defendant admitted liability for the tax of 1933, but denied that it owed an additional tax for the year 1934, averring that at the close of its fiscal year ending June, 1934, there was issued and outstanding capital of the value of $276,000 from which it had the right to deduct a deficit of $108,807.45, leaving a balance of $167,-192.53, representing the value of its capital stock, as reflected on its books, or book value, and that it had paid the franchise tax due thereon, which is all that the state is lawfully entitled to.

The state challenged the defendant's right to make the above deduction, but the trial judge concluded that the words "capital stock" as used in the revenue statute in question, were equivalent to "shares of capital stock," and therefore the corporation properly deducted its losses, as reflected on its books, in arriving at the value of shares of capital stock, in determining the amount upon which the franchise tax should be calculated. Judgment was entered in favor of the state for the additional tax of 1933, which was paid, and the state has appealed from that part of the judgment dismissing its demands for the additional tax for the year 1934.

We are favored with a brief from amici curiæ, who point out that the opinion in this case will affect a great many other corporations similarly situated, but not parties to this litigation.

The facts in the case are undisputed and may be briefly stated, as follows:

The defendant is a Louisiana corporation with issued and outstanding capital stock amounting to $276,000. It has neither reserve, undivided profits, nor any borrowed capital. It suffered a loss or deficit of $108,807.45, which it deducted from its outstanding capital, in making its return to the secretary of state as required by the provisions of Act No. 25 of the First Extra Session of 1934, amending Act No. 8 of the Regular Session of 1932. The state questioned the defendant's right to make this deduction and thereby pay only on the book value of its shares of stock, and this proceeding followed.

The pertinent subdivisions of Act No. 8 of the Regular Session of 1932, as amended by section 1 of Act No. 25 of the First Extra Session of 1934, read as follows:

"(2) *Every domestic corporation taxed under this Act shall determine the amount of its issued and outstanding capital stock,*

*surplus and undivided profits, which in no case shall be less than the assessed value of all of its property in this State for the calendar year preceding that in which the tax is due;* provided, that if the capital used or invested in the business or enterprise of such corporation includes borrowed capital in excess of its capital stock, surplus and undivided profits, such excess of borrowed capital shall be added to the capital stock, surplus and undivided profits as part thereof as the basis for computing the franchise tax under this Act and determining the extent of the use of its franchise in this State.

"(3) *For the purpose of ascertaining the tax hereby imposed, capital stock, whether having par value or not, shall be deemed to have such value as is reflected on the books of the said corporation,* subject to examination and revision by the Secretary of State, from the information contained in the report filed by said corporation, as herein provided, and from any other information obtained by the Secretary of State, *but in no event shall such value be less than is shown on the books of the corporation.*

"(4) *After determining the correct amount of its capital stock, surplus and undivided profits as herein provided,* in such form and under such regulations as the Secretary of State may prescribe, and on forms provided by him, *the said corporation shall pay a tax for the privilege of carrying on, doing business, or the continuance of its charter within this State,* at the rate of One and 50/100 *($1.50)* Dollars *for each One Thousand Dollars* ($1,-

000.00) *on the amount of its capital stock, surplus and undivided profits, determined as herein provided;* provided that the minimum tax shall not be less than Ten Dollars ($10.00) in any case." (Italics ours.)

It is conceded by all parties concerned that the state has a constitutional right to impose a franchise license tax upon corporations granted the right and privilege to use their franchises in the state, and the authority to prescribe the measurement of such tax. Home Ins. Co. of N. Y. v. State of N. Y., 134 U.S. 594, 10 S.Ct. 593, 595, 33 L.Ed. 1025; State of Maine v. Grand Trunk Ry. Co., 142 U.S. 217, 12 S.Ct. 121, 163, 35 L.Ed. 994.

All able counsel agree that it is a cardinal rule of construction that the legislative intention should be determined from the whole and every part of the statute taken together and effect should be given to every part thereof, if possible. State ex rel. Lyons v. Democratic State Central Committee, 165 La. 531, 115 So. 740; Garrison v. City of Shreveport, 179 La. 605, 154 So. 622; Houghton v. Hall, 177 La. 237, 257, 148 So. 37; Jackson State Nat'l Bank v. Merchants' Bank & Trust Co., 177 La. 975, 149 So. 539; Bradley v. Swift & Co., 167 La. 249, 251, 119 So. 37.

The issue is narrowed down to what measure the Legislature prescribed, in order to ascertain the amount of the franchise tax to be paid by a domestic corporation, as set forth in the above subdivision of the statute. It will be noted that the term "capital stock" is used three times in subdivision 2, once in subdivision

3, and twice in subdivision 4. In each of the three instances in which the term "capital stock" is used in subdivision 2, and in each of the two instances in which this term is employed in subdivision 4, it is separated by a comma from the words "surplus and undivided profits," which follow immediately thereafter. This shows clearly that "capital stock" is used as a separate and distinct factor from "surplus and undivided profits" and cannot reasonably and logically be confused with the terms "capital" or "shares of capital stock."

Now, in what sense are the words "capital stock" used here, and are they used in subdivision 3 to convey a meaning different from that expressed in the other two subdivisions? "Capital stock" as here used means capital stock in its legal sense, i. e., the amount set forth in the charter of the corporation, subscribed and paid for by the shareholders thereof, in either money or in property, labor, or services, when the corporation is organized, or afterwards, as the fixed amount of capital which the corporation is to employ in conducting its operations. It does not mean "shares of capital stock," which represent the allocate part each shareholder has in the surplus and undivided profits, and all the other assets of the corporation, after paying all of its debts. If the legislative intent had been to give the term "capital stock" such a meaning, it would not have inserted as *separate and distinct factors the* *"surplus and undivided profits" of the corporation, which must be taken into consideration in arriving at the value of the* *"shares of capital stock."* It is only by giving the term "capital stock" its true, definite, and accepted meaning that any legal effect can be given to the words "surplus and undivided profits." The construction contended for by the defendants makes it necessary to delete that phraseology from the statute.

There is a well-recognized distinction between "capital stock" and "shares of capital stock."

In Farrington v. Tennessee, 95 U.S. 679, 686, 24 L.Ed. 558, 560, the Supreme Court of the United States said:

"The capital stock and the shares of the capital stock are distinct things. The capital stock is the money paid or authorized or required to be paid in as the basis of the business of the bank, and the means of conducting its operations. It represents whatever it may be invested in. If a large surplus be accumulated and laid by, that does not become a part of it. The amount authorized cannot be increased without proper legal authority. If there be losses which impair it, there can be no formal reduction without the like sanction. No power to increase or diminish it belongs inherently to the corporation. It is a trust fund, held by the corporation as a trustee. It is subject to taxation like other property. * * *

"The shares of the capital stock are usually represented by certificates. Every holder is a cestui que trust to the extent of his ownership. The shares are held and may be bought and sold and taxed like other property. Each share represents an aliquot part of the capital stock. But the

holder cannot touch a dollar of the principal. He is entitled only to share in the dividends and profits. Upon the dissolution of the institution, each shareholder is entitled to a proportionate share of the residuum after satisfying all liabilities. The liens of all creditors are prior to his. The corporation, though holding and owning the capital stock, cannot vote upon it. It is the right and duty of the shareholders to vote. They in this way give continuity to the life of the corporation, and may thus control and direct its management and operations. The capital stock and the shares may both be taxed, and it is not double taxation."

See, also, Van Allen v. Assessors, 3 Wall. 573, 18 L.Ed. 229; New York ex rel. Duer v. Commissioners, 4 Wall. 244, 18 L.Ed. 344; Bank of Commerce v. State of Tenn., 161 U.S. 134, 16 S.Ct. 456, 40 L. Ed. 645; Public Treasurer v. Petway, 55 N.C. 396, 406; City of Memphis v. Home Ins. Co., 91 Tenn.(7 Pickle) 558, 19 S.W. 1042, 1043; People v. Wemple, 78 Hun, 63, 29 N.Y.S. 92, 94; Judy v. Beckwith, 137 Iowa, 24, 114 N.W. 565, 15 L.R.A.(N.S.) 142, 15 Ann.Cas. 890; First Nat. Bank of Cincinnati v. Durr (D.C.Ohio) 246 F. 163, 164.

The Legislature of this state has likewise recognized this fundamental difference between the two phrases. Under the provisions of section 27 of Act No. 170 of 1898, an assessment is not permitted against the *capital stock* of a bank *"whose capital stock is represented by shares,* but the *shares shall be assessed."*

Section 2 of Act No. 14 of 1917, Ex. Sess., states that "no assessment shall hereafter be made against the *capital stock, surplus, or undivided profits* of any bank * * * whose capital stock is represented by shares, *but the shares shall be assessed."*

Section 1, pars. 6 and 10, of Act No. 250 of 1928, the general corporation law of this state, sets forth the following definitions:

" 'Shares' means the units into which the shareholders' rights to participate in the control of the corporation, in its profits or in the distribution of corporate assets, are divided. * * *

" 'Capital Stock' means the aggregate amount, at any time, of

"(a) the par value of all allotted shares having a par value, including such shares allotted as stock dividends, and

"(b) the aggregate of the cash and/or the value of any consideration other than cash, determined as provided in this Act, agreed to be given or rendered as payment for all allotted shares having no par value, plus such amounts as may have been transferred from surplus upon the allotment of stock dividends in shares having no par value."

It is clear to us that the term "capital stock" as used in subdivisions 2 and 4 of section 1 of Act No. 25 of the 1st Ex. Sess. of 1934, amending Act No. 8 of 1932, is not synonymous with the phrase "shares of capital stock."

Is there any reason to change the language of the act so as to substitute for

the words "capital stock" in subdivision 3 the words "shares of capital stock," as our learned brother below did?

The law presumes that the members of the Legislature were familiar with and took into consideration, in considering the corporation franchise tax, the definitions and provisions of the state's general corporation law, a creature of that body. They knew the words "capital stock" had previously been given a legislative definition which was in accord with judicial declarations on the subject. They knew that corporations are forbidden by section 2 of article 13 of the Constitution of 1921 from issuing shares of stock, except for labor done, or money, or property actually received. This is clearly evidenced by the provisions of section 15 of Act No. 250 of 1928 (the general corporation statute) which provides:

"III. Subscriptions for shares having a par value shall be made payable:

"(a) with cash to an amount not less than the aggregate par value of the shares subscribed for; or

"(b) with consideration other than cash, the fair valuation of which is not less than the aggregate par value of the shares subscribed for.

"IV. Subscriptions for shares having no par value shall be made payable as follows:

"(a) if the subscription is signed before incorporation, with consideration of the character and value determined by the incorporators;

"(b) if the subscription is signed after incorporation, with consideration of the character and value determined by the shareholders at any annual or special meeting, duly called and held for that purpose, or determined by the board of directors acting under authority conferred by the shareholders or by the articles."

With this well-defined meaning of the words "capital stock" both in judicial and legislative pronouncements, it was not necessary for the Legislature to again define them when it adopted Act No. 8 of 1932. The Legislature was apparently satisfied with the definition in the corporation act, so far as "capital stock" represented by par value shares is concerned, as a basis for the determination of the value of such "capital stock." It did not deem it necessary to provide a rule for the determining of the value of such "capital stock" for the purpose of the tax, because it was already fixed, by the very definition, at the aggregate par value of all allotted shares. The Legislature merely changed the basis from "allotted shares" to "issued and outstanding shares."

On the other hand, the definition in the general corporation act of "capital stock, represented by shares without par value," is not sufficient in itself to determine the value of such "capital stock." Therefore, one must resort to the corporation's books and records to ascertain the nature of the consideration received for the issuance of the shares and the value of that consideration as determined by the incorporators or the shareholders or board of directors, as the case might be. Hence, the Legislature

found it necessary to place the following provision in section 1 of Act No. 8 of 1932:

"(2) For the purpose of ascertaining the tax hereby imposed, capital stock having no nominal or par value shall be deemed to have such value as is fixed therefor by the said corporation or by the Secretary of State from the information contained in the report filed by said corporation, as herein provided for, and from any other information obtained by the Secretary of State; but in no event shall the value of such stock so fixed exceed the. true value thereof."

When the foregoing paragraph is read in connection with the Constitution and with the pertinent provisions of the general corporation statute, it is obvious that the Legislature intended that, for the purpose of measuring the tax, the capital stock represented by shares without par value should be deemed to have such value as the corporation fixed therefor, pursuant to the provisions of Act No. 250 of 1928, if such valuation was not underestimated by the corporation, in which event, the secretary of state was given the right to determine the true value of the consideration received by the corporation for the issuance of the shares and to fix the value of such capital stock at the proper amount.

A reading of the provisions of Act No. 8 of 1932 also shows that there was not any satisfactory rule prescribed by which the value of "capital stock" represented by shares of par value stock, issued for a consideration other than cash, could be determined. The corporation could issue par value stock having an aggregate value of $5,000 and receive therefor property worth infinitely more. than that sum. The secretary of state was obliged to accept the total value of all issued and outstanding stock, as the value of the "capital stock," although the "capital stock" had a real value of many times more than the aggregate amount of the par value of the shares of stock issued for such consideration. To correct this defect in the law, the Legislature adopted Act No. 18 of 1934, subdivision 3 of section 1 thereof, providing:

"For the purpose of ascertaining the tax hereby imposed, capital stock, whether having par value or not, shall be deemed to have such value as is reflected on the books of the said corporation, subject to examination and revision by the Secretary of State, from the information contained in the report filed by said corporation, as herein provided, and from any other information obtained by the Secretary of State, but in no event shall such value be less than is shown on the books of the corporation."

We emphasize the fact that this amendment did not change the definition of "capital stock," but merely prescribes a uniform rule for the valuation thereof, and the correctness of this observation is strengthened when it is noted that Act No. 25 of the First Extra Session of 1934, did not attempt to change the definition of "capital stock," but reiterated a uniform rule for the valuation thereof by employing the identical language used in subdivision 3 of section 1 of Act No. 18 of 1934.

The contention of learned counsel for the defendant and the able amici curiæ that an entirely different basis of taxation is produced by virtue of the amendment, because "capital stock," whether represented by shares having a par value or not, is now to be valued by the same rule and that the tax must no longer be considered as measured by "the issued and outstanding capital stock, surplus and undivided profits," is contrary to the context of the statute and necessitates the elimination of several of its provisions, producing incongruous results.

■ The provisions of subdivision 2, which precede, and the provisions of subdivision 4, which follow, the provisions of subdivision 3 of section 1 of Act No. 25 of the First Extra Session of the Legislature of 1934, were contained in subdivision 4 of section 1 of Act No. 8 of 1932, and remain a part of the law as much as does subdivision 3 of section 1 of Act No. 25 of the First Extra Session of 1934. Therefore, all of these subdivisions must be read together and a construction placed thereon which will harmonize them and not one which will make subdivision 3 destructive of subdivisions 2 and 4.

■ Now, subdivision 2 plainly states that "the amount of its issued and outstanding capital stock, surplus and undivided profits," plus the borrowed capital in excess of capital stock, surplus, and undivided profits shall form "the basis for computing the franchise tax under this Act and determining the extent of the use of its [the corporation's] franchise in this State." Subdivision 4 expressly provides that "after determining the *correct amount of its capital stock, surplus and undivided profits* as herein provided" the corporation must pay a tax *"on the amount of its capital stock, surplus and undivided profits, determined as herein provided."*

But, the provisions of subdivisions 2 and 4 cannot stand with the interpretation placed upon the provisions of subdivision 3, that the tax is to be based on the value of the "shares of capital stock" or "book value of the shares of capital stock," because, in determining the value or book value of the shares of stock, *the surplus and the undivided profits must be taken into consideration,* and these two factors, i. e., *the surplus and the undivided profits, must either be eliminated from subdivisions 2 and 4, as if they had never been written therein, or must serve as a duplication of the taxes on surplus and undivided profits.*

Furthermore, if defendant's interpretation prevails, borrowed capital, if any, must necessarily be deducted, since it is a liability, and, consequently, cannot be added to the capital stock, surplus, and undivided profits, as a part thereof, as expressly and definitely required by subdivision 2 of the statute.

We fail to see how it can be consistently argued that in subdivision 2, the Legislature used the term "capital stock" to mean "shares of capital stock," for it would then have said that the corporation should determine the amount of its issued and outstanding "shares of capital stock, surplus and undivided profits," and add thereto the

borrowed capital in excess thereof, as part of the value of the "shares of capital stock," "surplus and undivided profits," when, according to the construction of the district judge, the tax is to be applied only on the value of the "shares of capital stock." ˙ *In order to determine the value of the shares of capital stock, generally referred to as the book value, we would necessarily have to include the surplus and undivided profits (and also the value of all of the corporation's assets, including movable and immovable properties and cash), and we would also then have to again add the "surplus and undivided profits," as required by the clear and unambiguous provisions of subdivisions 2 and 4 of the act,* to arrive at the total amount subject to the tax, or, we would be compelled to eliminate the wording "surplus and undivided profits" from consideration entirely. We would thereby, in effect, change the language of sudivision 4 to read, after determining the correct amount of its shares of capital stock, the corporation shall pay a tax at the rate of $1.50 per each $1,000 of the amount of its shares of capital stock.

If it be said that it is only in subdivision 3 that the term "capital stock" must be accorded the meaning of "shares of capital stock," then the Legislature has prescribed a vain and useless measure for the tax, for the value of "the shares of capital stock" is not, expressly or impliedly, mentioned, referred to, or used in the formula for the computation of the tax prescribed in either subdivisions 2 or 4 of the statute.

This is a result wholly unwarranted by the context and well-defined meaning of the terminology employed by the Legislature in enacting this statute.

"Capital stock" by both legislative and judicial definitions, consists of the contributions made by the shareholders to the corporation's capital. The value of the "capital stock" is the aggregate value thereof. A certificate of stock is issued to each shareholder for his contribution to the "capital stock" of the corporation, entitling him to a proportionate share in the corporation. There is no difficulty in ascertaining the total value of the capital stock where the contribution has been made in cash and a certificate of a value equal to the cash is issued, for the aggregate amount of the cash contributions is the "capital stock." When, however, the certificate is issued for a cash contribution but does not show the value of the share, one must resort to the books of the corporation to determine the consideration received for that share. When the certificate of stock has been issued in consideration of property or services rendered, it is impossible to arrive at the true value of the consideration by merely adding the respective amounts of the outstanding shares or certificates and this is true whether the stock has a par value or not. Therefore, one must consult the books of the corporation to find the true value of the capital stock, i. e., the actual value of the contributions made by the shareholders as a consideration for their stock. Most positively, the books of the corporation must show its indebtedness to the respective shareholders

for their contributions, and each of these considerations representing a share of stock must be given some value by the representatives of the corporation, as required by the general corporation act of this state.

It is admitted that the books of the defendant corporation show that it owes to its respective shareholders for their contributions to its capital stock the sum of $276,000. This is unquestionably reflected on the corporation's books. Hence, subdivision 3 of section 1 of Act No. 25 of the First Extra Session of 1934, provides a definite measure for the tax by stating that the capital stock, whether having a par value or not, shall be deemed to have such value as is reflected on the books of the corporation, and that this value shall not be less than appears on the books. In other words, the total sum of the contributions made by the shareholders consisting of cash, services, or property, whether having a par value or not, shall be the value of the contributions as reflected on the books of the corporation, subject to revision by the secretary of state, but in no event shall such value be less than the corporation's books show it received.

There can be no doubt that the corporation is obliged to record in its books the transactions involving the contributions by the shareholders, just as it is compelled to keep an account in its books of any other kind of business matter.

We do not feel that it was the intention of the Legislature to favor the unsuccessful corporations over the successful ones by doubly taxing the prosperous corporations'

undivided profits and surplus, in order to give a partial or total exemption from the tax to corporations which impaired or lost their capital, surplus, and undivided profits due to mismanagement, carelessness, or sheer misfortune. This would be the effect of placing on the law the interpretation defendant is urging.

In the case of State v. Xeter Realty, Ltd., 182 La. 414, 162 So. 29, 30, we said:

"In answer to appellant's complaint that its capital stock is without any actual value and that the secretary of state acted arbitrarily in assessing it with a franchise tax based on its book borrowed capital, we think it is sufficient to say *that the law allows no deduction for a deficit, and requires that appellant's tax be measured as if no loss had occurred.*" (Italics ours.)

It is stated that the reason why the amendment under consideration was adopted was for the purpose of allowing a failing corporation to deduct its losses. Our explanation why the Legislature enacted the amendment disposes of this argument.

The statute not only definitely states what we have construed it to mean, but it is apparent that the Legislature was seeking to provide a clear and definite plan under which the franchise tax could be levied and collected. The members knew that the value of the "capital stock" as reflected on the corporation's books could be expeditiously determined. On the other hand, they realized that, in order for the state to ascertain the book value of the shares of stock of the corporations of this

state would lead to an infinite amount of work, requiring numberless employees, experts, and accountants, with resulting delay and expenses which must inevitably adversely affect the fisc of the state. A conclusion wholly undesired and distinctly against public welfare. Certainly, the members of the Legislature in amending the law were trying to provide a more simple and practical way of raising revenue. Surely it was not their intention to make the law more involved and cumbersome.

For the reasons assigned, the judgment appealed from is annulled and set aside, and it is now ordered, adjudged, and decreed that there be judgment herein in favor of the state of Louisiana and against the defendant, Bisso Realty & Investment Co. Inc., for the additional franchise tax for the year 1934, with statutory penalties, attorney's fees, and costs of examination, amounting to the sum of $243.64, secured by the usual lien and privilege upon the assets of the corporation; and all costs of court.

O'NIELL, C. J., and ROGERS and ODOM, JJ., dissent.

BRUNOT, J., recused.

PONDER, J., concurring.

O'NIELL, Chief Justice (dissenting).

The ruling in this case, from which I respectfully dissent, is that, for the purpose of ascertaining the amount of the franchise tax imposed upon a corporation having outstanding capital stock of the

par value of $276,000 and of the actual or book value of only $108,807.45, the capital stock shall be deemed to have its original or par value of $276,000. The Bisso Realty & Improvement Company, having an impairment of its capital, has, of course, no surplus nor undivided profits, and the corporation has no borrowed capital. The only question, therefore, is whether the capital stock shall be deemed to have its original or par value, or, as the statute declares, "shall be deemed to have such value as is reflected on the books of the said corporation." The statute, subdivision 3 of section 1 of Act No. 25 of the First Extra Session of 1934, which is an amendment and re-enactment of subdivision 2 of section 1 of Act No. 8 of 1932, declares:

"For the purpose of ascertaining the tax hereby imposed, capital stock, whether having par value or not, shall be deemed to have such value as is reflected on the books of the said corporation, subject to examination and revision by the Secretary of State, from the information contained in the report filed by said corporation, as herein provided, and from any other information obtained by the Secretary of State, but in no event shall such value be less than is shown on the books of the corporation."

The reason why the statute declares that the capital stock shall *be deemed to have*—instead of saying that it *shall have*—such value as is reflected on the books of the corporation is that the value reflected on the books of the corporation is subject to revision by the secretary of state if he finds, on examination of the annual report filed by the corporation, or from any other

source of information, that the actual value of the capital stock is greater than the value reflected on the books of the corporation. But the secretary of state or his auditor has no authority to reduce such value, either by decreasing the estimate of the value of the assets of the corporation or by increasing the estimate of its liabilities. That is explained by the expression in the statute, "but in no event shall such value [ascertained by the secretary of state] be less than is shown on the books of the corporation." In other words, the value of the capital stock "shown on the books of the corporation" is binding upon the corporation, but not upon the secretary of state. The term "shown on the books of the corporation" is used as a synonym for "reflected on the books of the said corporation." The report referred to in the statute, which report the secretary of state is to examine for the purpose of ascertaining whether the value of the stock, as reflected on the books of the corporation, is truthfully and correctly reflected on the books of the corporation, is the report filed by the corporation for the year for which the tax is imposed. That is obvious from the fact that the statute requires that the report shall be filed *annually.*

The purpose of amending this subsection of the statute was to have the same standard for the valuation of par value stock that was already adopted for the valuation of no par value stock. By the corresponding subdivision of the act of 1932 (which was amended by the act of 1934), it was declared that no par value stock should be deemed to have such value as was fixed or determined by the corporation, or by the secretary of state, from the information contained in the report filed by the corporation, or from any other available information. That meant, of course, that stock having no par or nominal value should be deemed to have the value reflected on the books of the corporation, subject to revision by the secretary of state, if he was not satisfied with the value shown on the report filed by the corporation. But there was no declaration in the statute as to what value par value stock should be *deemed to have,* for the purpose of ascertaining the amount of the tax. The interpretation of the statute, before it was amended, was that par value stock should be taken at its par value, for the purpose of ascertaining the amount of the tax. See State v. Xeter Realty, Ltd., 182 La. 414, 162 So. 29. The ruling in the Xeter Realty Case was controlled by the act of 1932, subdivision 2 of section 1 of which act was as follows:

"For the purpose of ascertaining the tax hereby imposed, capital stock having no nominal or par value shall be deemed to have such value as is fixed therefor by the said corporation or by the Secretary of State from the information contained in the report filed by said corporation, as herein provided for, and from any other information obtained by the Secretary of State; but in no event shall the value of such stock so fixed exceed the true value thereof."

The expression "but in no event shall the value of such stock so fixed exceed the true value thereof" had reference, of course, to the value fixed by the secretary of state if

he was not satisfied with the value shown on the report filed by the corporation. There was no necessity for the statute to guard against—and hence no intention to guard against—the corporation's declaring the value of its no par value stock to "exceed the true value thereof." In amending the statute, in 1934, the Legislature substituted a more appropriate proviso, to the effect that, if the secretary of state undertakes to revise the value "reflected on the books of the said corporation," and shown on the report filed by the corporation, he or his auditor shall not have authority to reduce the value "reflected on the books of the said corporation," on the basis of which the corporation tenders, or is bound to pay, the amount of the tax.

It appears to me that the discussion of the difference between the terms "capital stock" and "shares of stock," in the prevailing opinion in this case, is entirely beside the question, as to the meaning of the expression in the statute: "For the purpose of ascertaining the tax hereby imposed, capital stock, whether having par value or not, shall be deemed to have such value as is reflected on the books of the said corporation." The value of capital stock as reflected on the books of the corporation is the definition of the term "book value," in ordinary or commercial parlance. In Webster's New International Dictionary (2d Ed.), "book value" of capital stock is defined thus: "Specif., of stock, the value indicated by the excess of assets over liabilities." In an earlier edition of the same dictionary, the definition of "book value"

is given thus: "Finance. * * * specif., of stock, the value as determined by the net profits or deficit of a corporation as shown by its books." In legal parlance, as well as in ordinary or commercial parlance, "the value reflected on the books of the corporation" merely defines the term "book value." Steeg v. Leopold Weil Building & Improvement Co., 126 La. 101, 52 So. 232; Fleming v. Fleming, 211 Iowa, 1251 (syl. 5), 230 N.W. 359, 369; Davis v. Coshnear, 129 Me. 334, 151 A. 725, 727; Corbett v. McClintic-Marshall Corporation, 17 Del.Ch. 165, 151 A. 218, 222 (syl. 5); Elhard v. Rott, 36 N.D. 221, 162 N.W. 302; Gurley v. Woodbury, 177 N.C. 70, 97 S.E. 754, 756; 1 Words and Phrases, First Series, 171, actual value; 8 Words and Phrases, First Series, 7276; 1 Words and Phrases, Second Series, 479, book value; 4 Words and Phrases, Second Series, 1141, value of capital stock; 1 Words and Phrases, Third Series, 900, book value; 7 Words and Phrases, Third Series, 824, value of stock; 1 Words and Phrases, Fourth Series, 312, book value.

I am not confusing the term "capital stock" with "shares of capital stock," or the "value of a corporation's capital stock" with "the value of its shares of capital stock." There was no such confusion of terms in the argument of the attorneys for the defendant in this case; and there is no such confusion of terms in their briefs. The book value of a corporation's capital stock is nothing more nor less that the book value of all of its outstanding shares of stock. The only purpose for which a distinction has ever been made—or is ever

made—between a corporation's capital stock and its shares of stock is to distinguish between a tax imposed upon the corporation and a tax imposed upon a shareholder. But that has nothing to do with this case, where the tax is imposed upon the corporation itself, as a franchise tax upon its existence as a corporation.

The reason given, in the prevailing opinion in this case, for maintaining that the expression "such value as is reflected on the books of the said corporation," or the expression "value * * * shown on the books of the corporation," does not mean "the book value," is that the "book value" of a corporation's capital stock includes, essentially, the surplus and undivided profits of the corporation. That is true only of a corporation that has a surplus or undivided profits. But, even then, the surplus and undivided profits are not carried on the books of the corporation as "capital stock." The "surplus" of a corporation is reserved for the payment of dividends, and therefore is never transferred to the "capital stock" account, except "the surplus to be transferred to capital as payment for shares to be allotted as stock dividends," as provided in Act No. 250 of 1928, § 17(b), p. 420. Such a transaction, of course, increases the "capital stock" account to the same extent that it reduces the "surplus" account; all of which, of course, is shown or reflected on the books of the corporation. No one, I dare say, would make the mistake of including the surplus and undivided profits twice in his calculation of the total amount of the capital stock, surplus, and undivided profits of a corporation, as shown or reflected on the books of the corporation. If there is an accumulation of surplus or undivided profits, the accumulation must be added to the amount appearing under the entry "capital stock," in order to ascertain the value of the capital stock as reflected on the books of the corporation; but if, on the contrary, the books show a loss, or deficit, instead of a surplus or undivided profits, the loss or deficit should be deducted from the amount appearing under the entry "capital stock," in order to ascertain the value of the capital stock as reflected on the books of the corporation. That is what the statute means by the declaration that, for the purpose of ascertaining the tax hereby imposed, capital stock, whether having par value or not, shall be deemed to have such value as is reflected on the books of the corporation. If the Legislature had intended to say that capital stock having a nominal or par value shall be deemed to have the value which was paid to the corporation for the stock, regardless of any subsequent loss or impairment, the Legislature would not have used the significant expression "shall be deemed to have such value as is reflected on the books of the said corporation."

The quotation from the opinion rendered in the Xeter Realty Case, in the prevailing opinion in this case, is not at all appropriate, for two reasons: First, because the decision in the Xeter Realty Case was controlled by the provisions of Act No. 8 of 1932, before it was amended, and, second, because, in that case, the capital used or invested in the business of the cor-

poration included borrowed capital exceeding in amount the sum of the capital stock, surplus, and undivided profits, and hence, according to the state's interpretation of the statute, the tax was computed only upon the amount of the borrowed capital. The outstanding capital stock, in that case, had a par value of only $3,200; the total assets of the corporation were said to be worth only $37,000; and the borrowed capital used or invested in the business amounted to $110,000. The state claimed that the tax should be computed upon the $110,000; and it was so decided. The corporation contended that its capital stock had no actual value whatever, and that the franchise tax should not have been computed upon a sum exceeding the total value of the assets of the corporation. It was a matter of no concern, therefore, what the value of the capital stock of the corporation was, so long as the total amount of the capital stock, surplus, and undivided profits did not exceed in amount the $110,000 of borrowed capital. It was in those circumstances that the court said that the law allowed no deduction for a deficit.

The effect of the ruling in the present case will be merely to require a corporation having par value stock to amend its charter, and thereby to reduce its capital stock, whenever a deficit or an impairment is shown or reflected on the books of the corporation, in any fiscal year, in order for the corporation to have the benefit of the amendment of the statute, abolishing the supposed discrimination between corpora-

tions having par value stock and those having no par value stock. The amending of the charter of a corporation is an expensive procedure, and would be of no benefit whatever to the state, in a case like this. I do not find anything in the statute suggestive of an intention on the part of the Legislature to impose any such needless expense upon corporations having capital stock of a nominal or par value, and having a deficit.

ODOM, Justice (dissenting).

The facts in this case are not disputed. The corporation was organized in 1931 and at the time this suit originated it had issued and outstanding par value capital stock amounting to $276,000, with no surplus, undivided profits, or borrowed capital. In the year 1934 it suffered a net loss of $108,807.45, so that at the end of that year the value of its capital stock, as reflected by its books, was $276,000 less $108,807.45, or $167,192.55. It was called upon to pay the franchise tax levied by Act No. 8 of 1932, as finally amended by Act No. 25, First Extra Session of 1934. It paid the tax computed upon the value of its outstanding par value capital stock, as reflected by its books for the year preceding; that is, as a basis for computing the tax, it deducted its loss in 1934 from the par value of its capital stock.

It was contended by counsel for the state, and their contention is upheld by the majority, that the corporation had no right to deduct its loss, and that the tax should be computed upon the original and not the present value of the capital stock.

I dissent from that holding. It is held by the majority, and I concur in that view, that the Legislature intended that "for the purpose of measuring the tax" the value of the capital stock, whether having par value or not, should be ascertained, and that the tax, where the corporation has neither surplus, undivided profits, nor borrowed capital should be computed upon the value of the capital stock.

In explaining the purpose and meaning of subdivision 3, § 1, Act No. 25, First Extra Session of 1934, the opinion of the majority says:

"We emphasize the fact that this amendment did not change the definition of 'capital stock' *but merely prescribes a uniform rule for the valuation thereof* and the correctness of this observation is strengthened when it is noted that Act No. 25 of the First Extra Session of 1934 did not attempt to change the definition of 'capital stock' *but reiterated a uniform rule for the valuation thereof by employing the identical language used in subdivision (3) of section 1 of Act No. 18 of 1934.*" (Italics are mine.)

Subdivision 3 of the said act says that "for the purpose of ascertaining the tax hereby imposed, capital stock, whether having par value or not, shall be deemed to have such value as is reflected on the books of the said corporation."

The tax imposed by the statute is an annual tax and corporations are required to make annual reports. The purpose of these annual reports is to put into the hands of the secretary of state each year specific data showing the financial condition of the corporation so that he may determine the amount of the tax due for the current year. These annual reports, among other things, must show the value of the capital stock as reflected by the books of the corporations. The report of the corporation, showing the value of its capital stock as reflected by its books, is not binding upon the secretary of state, but is subject to revision by him "from the information contained in the report filed by said corporation; as herein provided, and from any other information obtained by the Secretary of State, but in no event shall such value be less than is shown on the books of the corporation."

It is held in effect by the majority that the purpose of resorting to the books of the corporation and to such other information as the secretary of state may gather is to ascertain the amount of cash originally contributed by the stockholders, or the real value of the services or property for which the stock was originally issued, if the stock was not paid for in cash, and it is definitely held that the tax should be computed upon the value of the capital stock at the time the corporation was organized.

In so holding, the majority have overlooked the fact that the tax levied by the statute is an annual tax and that the purpose of the annual reports required by the statute is to show the current, and not the original, condition of the corporation's affairs. It will be conceded, I think, that even though a corporation has no surplus, undivided profits or borrowed capital, it must make and file with the secretary of state the annual report required by the act.

Surely the Legislature did not intend that the annual report of such corporations should show the value of the stock at the time the corporation was organized. The purpose of the Legislature in requiring these annual reports undoubtedly was to enable the secretary of state to determine the value of the capital stock at the close of the preceding year in order that he might determine the amount of the tax for the ensuing year. It was contemplated that the amount of the tax might vary from year to year, depending upon the value of the capital stock in cases where the corporation had neither surplus, undivided profits, nor borrowed capital. According to the majority holding, it was intended that the amount of the tax, where the corporation had nothing except its capital stock, should be the same from year to year. This was never contemplated.

According to subdivision 2, § 1, of the amended act, the purpose of requiring these annual reports showing the condition of the corporation's affairs is to serve "as the basis for computing the franchise tax under this Act and determining the extent of the use of its franchise in this State." The extent of the use of a corporation's franchise depends in a large measure upon the amount of capital which it has for use in the conduct of its business. Theoretically a corporation has in its possession and available for use in its business or enterprise the whole amount which the stock-holders have paid in or contributed. But, while that is true theoretically, it is not necessarily true in fact. It often happens, as it did in this case, that corporations in

the conduct of their business suffer severe losses. When they suffer losses, the value of the capital stock is necessarily depreciated to the extent of the loss. They may and frequently do lose part and even all of their capital stock. If part of the amount paid in as capital stock is lost by the corporation, the part which was lost is no longer available for use in its business or enterprise and for that reason cannot be included in the capital invested. The lawmakers realized this and for that very reason wrote into the act, as amended, subdivision 3, which relieves corporations of the burden of paying the franchise tax on capital which they do not possess, and therefore cannot use.

It is inconceivable to me that the Legislature intended that a corporation which has suffered such financial losses as to greatly reduce the value of its capital stock should pay as much franchise tax as it would if it had suffered no loss at all. I dissent.