The State of Louisiana, under Act 14 of the Second Extra Session of the Legislature of 1935, instituted this summary proceeding, or rule, against the defendant corporation to recover the sum of $625.59 for additional franchise taxes alleged to be due for the years 1936, 1937, 1938, 1939 and 1940, under the provisions of Act 8 of 1932, as finally amended by Act 10 of the First Extra Session of the Legislature of 1935, which acts are generally referred to as the "franchise tax statutes".
Defendant corporation, under the provisions of Section 19, Article XIX of the Constitution of this state, filed a plea of prescription of three years against the claim for additional taxes, penalties and attorneys fees for the years 1936 and 1937. For answer, it denied liability, setting forth that all the taxes for the years 1936 through 1940, inclusive, that were due and owing to the state, were paid in accordance with the requirements of the franchise tax statute, supra, and for which receipt has been acknowledged by the Secretary of State.
Further answering, defendant averred that it was a domestic corporation organized with an authorized capital stock of $81,100, consisting of 811 shares having a par value of $100 each; that prior to 1935 it had been the policy of the corporation and its directors to distribute annually to the stockholders all cash on hand at the close of each fiscal year, whether from earnings or from liquidation of capital assets; that at the close of the fiscal year of 1934 it was found that the capital assets had been reduced to approximately the sum of $53,000, with no outstanding debts; that accordingly, on January 10, 1935, a notice was issued calling a meeting of the stockholders for the purpose of amending the charter so as to change the par value of the stock to that having no par value, and attached to this letter was a statement showing the total worth of the company in capital, surplus and reserve, amounting to $53,822.21. This letter likewise informed the stockholders that, in view of this reduction in the value of the capital structure of the corporation, it was advisable to reduce the capital structure to the amount of its actual worth and thereby permit the continuation of the practice of dividing the assets of the corporation amongst the stockholders as they were turned into cash. It is further alleged that this stockholders' meeting was held on January 28, 1935, at which a resolution was adopted amending the charter by changing the par value stock to stock of no par value, and in due course certified copies of the amendment to the charter and the minutes of the meeting were filed with the Secretary of State and a certificate of amendment issued accordingly. Defendant further avers that, because of the change of the capital structure from par value stock to that of no par value, the aggregate value of which diminished as the capital assets were distributed among the stockholders annually, it was intended that the value of the capital stock, as reflected by the books of the corporation, would be correspondingly reduced annually; that, accordingly, the capital stock, surplus and undivided profits for the year 1936 amounted to $47,907.42, for the year 1937, $38,175.42 for the year 1938, $32,539.68, for the year 1939, $25,298.06, and for the year 1940, $18,580; that, in accordance with the value of the capital stock, surplus and undivided profits for these respective years, payment of the tax due for each year, as computed upon said values, respectively, were made to the Secretary of State and duly acknowledged.
The state challenged the method employed by the corporation in effecting a reduction of the value of its capital stock and in determining the amount upon which the franchise tax should be calculated.
Judgment was entered in favor of the defendant in rule, sustaining the plea of prescription of three years against the claim for the additional taxes for the years 1936 and 1937, and in favor of the state for the additional taxes, penalties and attorney's fees for the years 1938, 1939 and 1940. The state has appealed from that part of the judgment sustaining the plea of prescription and the defendant has appealed from that portion of the judgment sustaining the demand of the state.
The plea of prescription of three years against the claim for additional taxes *Page 798 
for the years 1936 and 1937 is based on Section 19, Article XIX of the Constitution of the State of Louisiana, as amended by Act 35 of 1938, approved by the people on November 8, 1938, the pertinent provisions of which read as follows: "* * * provided, further, that all taxes and licenses, other than real property taxes, shall prescribe in three years from the 31st day of December in the year in which such taxes or licenses are due".
In support of this plea, defendant corporation contended before the lower court that the effective result thereof should be that the claims asserted by the state for the years 1936 and 1937 are barred by the lapse of three years commencing from the 31st day of December in the year in which such taxes were due. It is evident that, should we sustain the constitutional interpretation contended for, the right of the state to collect the taxes due for these two years is prescribed.
The identical question was presented to us recently in the case of State of Louisiana v. Alden Mills, La.App., 8 So.2d 98, wherein we construed the amendment to operate prospectively and not retrospectively, and recognized the right of the state to collect the franchise taxes due by the defendant corporation for the years beyond the three-year period of limitation. We reiterate the conclusions reached by us in the Alden Mills case, supra, and it is our opinion that the plea of prescription was improperly sustained. See, also, State of Louisiana v. Gentilly Route 61 Co., Inc., 8 So.2d 794, decided by us this day.
The facts in the present case are not in dispute and may be briefly stated as follows:
The defendant, a domestic corporation, was organized with issued and outstanding capital stock amounting to $81,100. It has neither reserve, undivided profits, nor any borrowed capital. At the end of each fiscal year the board of directors distributed the cash on hand, whether from profits or an accumulation of capital assets, it appearing that no capital was needed for the operation of the company's business and the cash being distributed irrespective of its source. At the end of the fiscal year 1934 and as a consequence of this practice, it was found that the capital assets had been reduced, and amounted to approximately $53,000, whereupon the charter of the corporation was amended, eliminating the stock of par value and substituting therefor stock of no par value. The amendment seeking this change and which was filed with the Secretary of State, reads as follows:
"The total number of shares of common stock is One Thousand (1,000), having no par value and the board of directors of the corporation shall call in all stock presently outstanding and shall issue the new stock on a basis of share for share with the old stock."
The pertinent subdivisions of Act 8 of the Legislature of 1932, as amended by section 1 of Act 10 of the First Extra Session of 1935, reads as follows:
"(2) Every domestic corporation taxed under this Act shall determine the amount of its issued and outstanding capital stock, surplus and undivided profits, which in no case shall be less than the assessed value of all of its property in this State for the calendar year preceding that in which the tax is due; * * *.
"(3) For the purpose of ascertaining the tax hereby imposed, capital stock, whether having par value or not, shall be deemed to have such value as is reflected on the books of the said corporation, subject to examination and revision by the Secretary of State, from the information contained in the report filed by said corporation, as herein provided, and from any other information obtained by the Secretary of State, but in no event shall such value be less than is shown on the books of the corporation.
"(4) After determining the correct amount of its capital stock, surplus and undivided profits as herein provided, in such form and under such regulations as the Secretary of State may prescribe, and on forms provided by him, the said corporation shall pay a tax for the privilege of carrying on, doing business, or the continuance of its charter within this State, at the rate of Two Dollars ($2.00) for each One Thousand Dollars ($1,000.00) on the amount of its capital stock, surplus and undivided profits, determined as herein provided; provided that the minimum tax shall not be less than Ten Dollars ($10.00) in any case."
It must be conceded that, prior to December 31, 1935, the issued and outstanding stock of defendant corporation for the purpose of determining the amount of the franchise tax to be paid amounted to $81,100. The question arises, was the capital stock of the corporation, in law or in fact, reduced in value so as to entitle defendant *Page 799 
corporation to a corresponding reduction of the corporation franchise tax?
Section 44, subsection II of Act 250 of 1928, the general incorporation statute of this state, reads:
"If shares having a par value are to be changed into an equal or different number of shares having no par value, the amount of the consideration for which shares having no par value are allotted to take the place of outstanding shares having a par value shall be deemed to be the amount of the aggregate par value of such outstanding shares, or, if the actual value of such shares be less than their par value, the consideration may be stated in the articles of amendment to be their actual value."
It is readily apparent that the amendment to the charter of defendant corporation filed with the Secretary of State, as above quoted, wherein it sought to change its par value stock to stock of no par value, was merely a declaration of intention. The amendment simply provided that the board of directors shall have the authority to call in all stock presently outstanding and "shall issue the new stock (no par value) on a basis of share for share with the old stock". There is nothing to be found therein fixing the actual value of the no par value stock, nor is there any consideration for such transfer stated. The quoted provisions of the general incorporation act of 1928, supra, declare that, where the actual value of no par value shares substituted for par value shares be less than their par value, the consideration for the effective exchange may be stated, and the amount so fixed would become their actual value. Failing, however, to state a consideration fixing the actual value of the no par value stock, the section, supra, unmistakably provides that the value of the no par value stock allotted to take the place of the outstanding par value shares shall be deemed to be "the aggregate par value of such outstanding shares". It is obvious, therefore, that having failed to avail itself of the right to fix the actual value of the no par value stock issued in place of the outstanding par value stock, the latter aggregating the amount of $81,100, the value of such no par value stock is definitely fixed, in law and in fact, as that of the aggregate amount represented by the then outstanding par value stock.
Under the provisions of Act 10 of the First Extra Session of 1935, quoted supra, the issued and outstanding capital stock of a corporation, other than its surplus and undivided profits, serves as the basis in fixing the assessment for purposes of franchise taxes. The Secretary of State is precluded from making any other assessment. Defendant corporation, having failed to avail itself of the privilege of fixing the consideration of its no par value stock and which would, in turn, have become its actual value for purposes of taxation, the value of such no par value stock must be held to be that paid for the par value shares, being $81,100, the only basis as prescribed by law for the levying and collection of the taxes due each year.
The primary contention of defendant is based on what counsel terms a "self-liquidating corporation", meaning by that the intention of the stockholders to wind up the corporate affairs and to finally dissolve whenever this purpose is ultimately accomplished. By declaring dividends out of capital and paying out to the stockholders all cash on hand, it is obvious that the capital stock of the corporation was, to that extent, reduced in value, thereby intending to effect a proportionate automatic cancellation of the original outstanding $81,100 issue of stock. By this policy the corporation undoubtedly assumed that, in changing from par value to no par value, the value of the stock so substituted would automatically be reduced in book value, as each annual payment to the stockholders of dividends out of capital assets was made.
Section 45 of the general incorporation statute, supra, provides:
"Reduction or Redemption of Capital Stock.
"I. The capital stock of a corporation may be reduced at a meeting of the shareholders duly called and held for that purpose by a resolution adopted by the vote of the holders of two-thirds of the voting power of all shareholders entitled under the articles to vote, or by such larger or smaller vote, not less than a majority, as the articles may require.
"II. Following the adoption of such a resolution for the reduction of capital stock, articles of reduction of capital stock shall be prepared and filed in the manner required by section 43 for the preparation and filing of articles of amendment. The articles of reduction shall also state the financial condition of the corporation and that the proposed reduction will not reduce the actual *Page 800 
value of the assets of the corporation to an amount less than the total amount of its debts and liabilities plus the amount of its capital stock as so reduced.
"III. No attempted reduction of capital stock shall be effective until the Secretary of State has filed the articles of reduction and issued a certificate of reduction, and no such attempted reduction shall be valid, even if the Secretary of State has filed the articles of reduction and issued a certificate of reduction, if such reduction would reduce the actual value of the corporate assets to an extent prohibited by subdivision II of this Section."
It is clear that the mere intention of declaration on the part of defendant corporation is not in compliance with the method prescribed by section 45, supra, wherein a reduction or redemption of capital stock is to be effected. The statute demands specific affirmative acts on the part of a corporation which seeks a reduction or redemption of its capital stock and noncompliance with which is declared to be ineffective and invalid. By distributing the capital assets each year to the stockholders, which would, in turn, effect a reduction of the outstanding and issued capital stock, defendant argues, constituted an automatic reduction, thereby relieving it from the need of formal cancellation.
Counsel for defendant fail to discern the distinction which should be drawn between the words "capital stock", as used in the revenue statute in question, and the words "shares of capital stock".
The Supreme Court, in the case of State v. Bisso Realty 
Investment Company, 184 La. 579, 167 So. 87, 89, recognized this distinction and quoted approvingly from the case of Farrington v. Tennessee, 95 U.S. 679, 686, 24 L.Ed. 558, 560, wherein the Supreme Court of the United States said:
"`The capital stock and the shares of the capital stock are distinct things. The capital stock is the money paid or authorized or required to be paid in as the basis of the business of the bank, and the means of conducting its operations. It represents whatever it may be invested in. If a large surplus be accumulated and laid by, that does not become a part of it. The amount authorized cannot be increased without proper legal authority. If there be losses which impair it, there can be no formal reduction without the like sanction. No power to increase or diminish it belongs inherently to the corporation. It is a trust fund, held by the corporation as a trustee. It is subject to taxation like other property. * * *
"`The shares of the capital stock are usually represented by certificates. Every holder is a cestui que trust to the extent of his ownership. The shares are held and may be bought and sold and taxed like other property. Each share represents an aliquot part of the capital stock. But the holder cannot touch a dollar of the principal. He is entitled only to share in the dividends and profits. Upon the dissolution of the institution, each shareholder is entitled to a proportionate share of the residuum after satisfying all liabilities. The liens of all creditors are prior to his. The corporation, though holding and owning the capital stock, cannot vote upon it. It is the right and duty of the shareholders to vote. They in this way give continuity to the life of the corporation, and may thus control and direct its management and operations. The capital stock and the shares may both be taxed, and it is not double taxation.'"
The Bisso case, supra, involved the right of the defendant corporation to deduct losses from operation and management, as reflected on its books, as against its issued and outstanding capital stock, or book value, for purposes of tax computation. The court held that the capital stock of the corporation represented contributions originally made by the shareholders, consisting of cash, services or property, whether having a par value or not; that these contributions represent obligations of the corporation to its shareholders to the aggregate amount of the capital structure and that the franchise tax should be computed upon the value of the capital stock as reflected on the books of the corporation, subject to revision by the Secretary of State, at the time the corporation was organized.
The policy adopted by the defendant corporation in the instant case can, in effect, be readily likened to corporate losses sought to be deducted against its capital stock, as was involved in the Bisso case, supra. Whether as a result of losses occasioned through mismanagement or otherwise, or the voluntary reduction of its capital stock by payment of cash dividends from capital assets, it is in reality a reduction of the issued and outstanding capital of the corporation. The Supreme Court having held in the Bisso case that the capital stock could not be reduced from its value as originally fixed in the charter, it follows that a reduction of the capital stock, as was here *Page 801 
attempted, was a violation of the legally prescribed method. Likewise, the cancellation of capital stock without observance of the formal requirements of law can have no legal effect of reducing the capital stock of the corporation for purposes of taxation.
In the case of State v. Stewart Brothers Cotton Co., Inc.,193 La. 16, 190 So. 317, 321, a corporation, as a result of the death of one of its shareholders, paid out to the estate of the decedent, corporate assets in exchange for decedent's stock, the certificates representing the shares being delivered and held by the corporation. The defendant corporation contended that its capital structure, for purposes of taxation, had been reduced to the extent of the corporate assets transferred in said exchange, and which, in fact, constituted a surrender and cancellation of the stock so received in exchange. The court therein stated:
"It is clear that these * * * shares of stock acquired by the corporation in consideration of the transfer of one-third of its assets were not cancelled as required by Section 45 of Act 250 of 1928 * * *. This is the only legal method by which the capital stock of a corporation may be either increased or decreased. Therefore, the transaction did not have the legal effect of reducing the capital stock of the corporation."
Applying the ruling therein announced to the case at bar, we are convinced that the only aggregate value of issued and outstanding stock of defendant corporation on record with the Secretary of State, for purposes of taxation, was and remained $81,100. Our tax franchise statute provides a clear and definite plan for the levying and collection of the tax imposed. Our laws further provide for the procedure to be observed by corporations seeking a reduction or redemption of its capital stock. Though it is apparent that the defendant corporation was reducing the value of its outstanding and issued stock each year by virtue of cash payments out of its capital assets, such procedure was in the very teeth of our statutory provisions, supra, and must be held to have been ineffective and invalid.
There is no dispute over the correctness of the additional amount of taxes, penalties and attorney's fees claimed by the state for the years involved.
For the reasons assigned, it is ordered, adjudged and decreed, that the judgment of the district court sustaining the plea of prescription be and the same is hereby reversed, and accordingly it is ordered that the State of Louisiana do have and recover of defendant, Louisiana Navigation Fisheries Company, Ltd., the additional corporation franchise taxes, for the year 1936 in the amount of $87.64, and for the year 1937 in the amount of $113.32, plus statutory penalty of 20 per cent. and attorney's fees of 10 per cent. on said amounts, and further recognizing the lien and privilege of the state as provided by law.
In all other respects, the judgment appealed from is affirmed, defendant to pay all costs.
Reversed in part; affirmed in part.