# IN THE MATTER OF THE ESTATE OF
## CHARLES REDFIELD VOSE, Deceased

# No. 12,881
# United States Court of Appeals
### Third Circuit

# Argued January 27, 1960
# Decided March 21, 1960
# Corrected April 8, 1960

*See, also, 276 F.2d 424*

WILLIAM W. BAILEY, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellant*

CROXTON WILLIAMS, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before WOODBURY, FORMAN, and ALDRICH, *Circuit Judges*

ALDRICH, *Circuit Judge*

In July, 1957, Charles R. Vose died domiciled in the Virgin Islands, leaving a will in which he named appellants, and two others, as executors. The will was admitted to probate by the district court acting within its jurisdiction as a territorial court. 48 U.S.C. §§ 1611-12; 15 V.I.C. § 161. Local law provides that all executors must be residents.[1] Appellants, who had previously been citizens of the State of New York, represented in the probate proceedings that they had moved to the Islands and had become residents. They were duly appointed. Thereafter appellee, hereinafter referred to as petitioner, filed in the district court a petition seeking to have appellants removed as executors on the ground that they had not been, and were not residents. A hearing was held, and the court, after finding that appellants were not "permanent residents domiciled in the Territory," ordered their removal. They have appealed.

An additional statute is involved. 15 V.I.C. section 240, subsection (b), provides in part, "Any heir, legatee, devisee, creditor, or other person interested in the estate may apply for the removal of an executor or administrator who has become of unsound mind or been convicted of any felony or a misdemeanor involving moral turpi-

---

[1] 15 V.I.C. § 235(a): "The following persons are not qualified to act as executors or administrators: nonresidents of the Virgin Islands, minors, judicial officers of the district court, persons of unsound mind, or who have been convicted of any felony or of a misdemeanor involving moral turpitude." Section 235(b) provides: "A person named in a will as executor who is a nonresident of the Virgin Islands or a minor is entitled to qualify as executor upon removal of such disability, if he applies therefor within thirty days from the removal of such disability, if otherwise competent."

tude, or who has in any way been unfaithful to or neglectful of his trust, to the probable loss of the applicant. . . ." Subsection (d) of that section in part provides, "If any executor or an administrator becomes a nonresident of this territory, he may be removed and his letters revoked in the manner prescribed in subsection (b) of this section. . . ."

Appellants make a number of contentions — that removal must be under section 240(d) or not at all; that petitioner was not a person "interested in the estate"; that petitioner must show "probable loss," and has not done so; that "resident" does not mean domiciliary, and that in any event appellants in fact met the requirements. They also contend that the court found that they "never" were residents, and that section 240(d) reads "becomes a nonresident" and can therefore have no application. We will consider these contentions somewhat in reverse order.

 Vose died on July 10, 1957. At this time appellant Schaffer (a law partner of appellant Young, and the one who has the stronger case with respect to residence) was practicing law in New York City, and was domiciled there.[2] On July 27, 1957, he appeared in St. Thomas and gave ex parte testimony, later apparently transcribed and subscribed to, to the effect that he was a resident of the Islands. The will was admitted to probate the same day, and he was appointed an executor. It appears that on July 15, 1957, Schaffer had stated to a Mrs. Kruger, "I have to get a permanent place here and I want to live down here. I'm going to live here . . . I want a real lease . . . ." Two days later a lease was entered into between them for an apartment, on which Schaffer has since paid rent each month. He took various other steps, such as

[2]At one point in his testimony Schaffer referred to himself as having been a resident of Connecticut. In other places he stated he was a resident of New York. The district court found a New York domicile, and we concur.

172

obtaining a post-office box, a driver's license and a bank account. Subsequently he became a registered voter, and arranged to pay federal income taxes as a resident of the Islands. He made other declarations of local domicile. At the trial he testified, "I hope some day to live here permanently and not go to New York. . . . New York isn't my home." However, he retained the apartment in New York City which he had previously called his residence, and his law office there, and continued in active practice in New York. It is true that all of this practice related to the Vose estate, but this fact does not seem to us of importance. It appeared that during the year 1958 Schaffer slept 160 nights in New York and 128 nights at his sister's home in Connecticut, 29 nights in the Virgin Islands, and 48 elsewhere, which "includes my vacation." It is interesting to observe, moreover, that of the 29 nights in the Islands, "about half the time I stayed at Bluebeard's [Hotel]"; and that he never used the cooking facilities in his apartment. It further appeared that his presence in the Virgin Islands was usually for necessary work on the Vose estate. It is perhaps not insignificant that in their account filed August 22, 1958, it was stated, "the executors have been called upon to make six trips to the Virgin Islands." This is somewhat the reverse of the concept which appellants presently advance, viz., that they have to make "trips to New York."

The district court ruled that the prohibition in the statute against "nonresidents" referred to persons not domiciled in the Islands. We agree.[3] It found that Schaffer did not lose his previous domicile and acquire a local one.

[3]The Virgin Islands statutes are very similar to those considered in the case of In re Cardoner's Estate, 1921, 27 N. M. 337, 201 Pac. 1051, 18 A.L.R. 575. The court there held, in a case on all fours with this one, that the statute required not domicile, but "mere actual residence." The difficulty the court had is illustrated by its attempt to distinguish a California case (which it regarded as "very correct") on the ground that the statute there read "bona fide resident." This distinction carries its own refutation. If the mere fact that the executor comes to the state or territory whenever he feels called upon to do so constitutes being a resident, the statute is meaningless.

173

We are not disposed to disagree with this finding. It is clear that Schaffer attempted to surround himself with the appearance and paraphernalia of an Island domicile, but these matters must be viewed in the light of his purpose. We believe this conduct was directed to appearances, and that whereas he may have had the intention to acquire a new domicile, he did not have the intention presently to make a new home in fact. See In re Sedgwick, D.C.D. Mass., 1915, 233 Fed. 655; Petition of Wright, D.C.E.D. Mich., 1941, 42 F. Supp. 306, 308; Restatement, Conflict of Laws § 19 (1934). True intent as to domicile may often be derived more from some actions than from others. The retention of his place of abode and a law practice in New York seem to us determinative in this case. Schaffer testified that he was in New York only because he "had to be." We think it clearer that he was in the Islands only because he had to be, and that "deep down" he did not regard them as his principal home. Domicile is not something one changes mechanically like a hat.

It would serve no useful purpose to discuss the facts with relation to appellant Young. We do not regard it as even arguable that he had acquired a local domicile.

■ With respect to whether petitioner was a person interested in the estate within the meaning of 15 V.I.C. § 240(b), the court found that she was "prosecuting in this court in good faith a claim against the above-entitled estate in Civil Action No. 138-1958. . . ." The nature of that suit admits of some complications. Suffice it to say that appellants do not seriously contend that petitioner has no interest whatever in the estate as a result thereof. Rather, their argument is that she is proceeding against appellants for other motives, and not in a bona fide attempt to protect that interest. We regard this contention as impermissible.

■■ Next, appellants assert that petitioner has shown

174

no "probable loss" resulting from the fact that they are nonresidents. We agree, for purposes of this appeal, that she has not.[4] We do not agree, however, that she has to do so. Appellants' position is that because of the comma preceding the clause as to probable loss in section 240(b), that clause must be taken as modifying all preceding clauses, and not simply the one immediately before it, and that a showing of probable loss thereby becomes an essential part of a proceeding under section 240(d) as well. Examination of the statutory structure as a whole indicates that this was not the legislative intent. Except for this immediately preceding clause, the provisions of section 240(b), dealing with removal, exactly parallel those of section 235(a) listing initial disqualifications. Seemingly, and reasonably, what would be a bar to appointment in a ground for removal. But if appellants' position is sound, that parallelism does not exist. For example, section 235(a) makes the commission of any felony a bar to appointment. If the final clause of section 240(b) is to be read as modifying the entire subsection, the only felony which would constitute a ground for removal would be one which could be shown to promise probable loss to the applicant. While some felonies might suggest a possible prospect of loss, if an applicant for removal has to show probable loss, many types of felonies might be committed by executors with no one able to establish sufficient qualifications to apply for their removal. It is even more difficult to see how any person could prove probable loss merely from the fact that an executor was a nonresident. Appellants could make the same factual argument they do now regardless of who was the applicant. Under these circumstances we must construe the requirement of "probable loss" in section 240(b) as relating only to the stated ground for removal immediately

[4]This assumption renders moot appellants' motion to strike appellee's brief.

preceding, viz., unfaithfulness to or neglect of trust. Punctuation is not to be used to emasculate a statute. Costanzo v. Tillinghast, 1932, 287 U.S. 341, 53 S. Ct. 152, 77 L. Ed. 350.

■ We will treat together appellants' contentions that removal must be under section 240(d) or not at all, and that this subsection applies only when an executor becomes a nonresident. Put into blunt language, this would mean that if at the ex parte hearing a proposed executor misrepresents to the court his qualifications when, in fact, he is not a resident, he cannot thereafter be removed, although he might be removed had he been a resident at the time and had thereafter ceased to be such. We cannot believe that the court is powerless in such a situation. Whether we are to construe section 240(d) broadly, or whether we are to look to the general powers given by 15 V.I.C. § 161 to the district court "to administer justice in all matters relating to the affairs of decedents," the result must be the same. Indeed, if we were to construe section 240(d) as not applying in these circumstances, that would not cause us to say appellants could not be removed, but, rather, that they could be removed by the court sua sponte, so that the question of petitioner's standing was of no relevance.

The judgment of the District Court is affirmed.