McBRIDE, Judge.
The Collector of Revenue for the State of Louisiana instituted a' summary action against Maison Blanche Corporation, a domestic corporation, to collect additional corporate franchise taxes for the years 1952 through 1956, in the principal sum of $21,-086.91, plus interest, attorney’s fees, and penalties. LSA-R.S. 47:601, 47:1517, 47:-1601, 47:1574. All of the facts alleged by the Collector shall be accepted as prima facie true and as constituting a prima facie case and the burden of proof to establish anything to the contrary shall rest wholly on defendant. LSA-R.S. 47:1574(4).
The petition alleges the Collector, acting under the authority granted by LSA-R.S. 47:604, increased the valuation of the capital stock of Maison Blanche Corporation from $291,000 to $3,308,837.68, the additional tax sued for being the amount due on such increased valuation.
After a trial in the lower court there was judgment in favor of defendant dismissing the Collector’s proceedings and he perfected an appeal to the Supreme Court, which appeal has been transferred to us pursuant to the recent amendment of Art. VII, § 30, Const.1921, L.S.A.
According to the stipulations of fact entered into by counsel and made part of the record, it appears that Maison Blanche Company, a domestic corporation, was organized in 1909 with an authorized capitalization of $1,500,000; in 1921 its capital stock was increased to $2,800,000, and later the same year the capital stock was increased to $6,300,000. All of the shares of capital stock of Maison Blanche Company were owned by City Stores Company and by the “written consent” of said sole stockholder, dated January 18, 1951, Maison Blanche Company was dissolved and liquidators appointed to wind up its affairs in the manner therein directed.
A few days later, January 22, 1951, Mai-son Blanche Corporation was organized under the laws of Louisiana, its objects and purposes being the acquiring, owning and operating real property and improvements thereon, particularly the buildings and real estate owned by Maison Blanche Company. Maison Blanche Corporation’s capitalization is $1,289,500, represented by 12,895 shares of common stock of a par value of $100 each, of which 10 shares were subscribed by the three incorporators, all of whom were employees and nominees of Maison Blanche Company, the amounts of their subscriptions for the stock being repaid them on March 5, 1951,. by City Stores Company.
On January 25, 1951, Maison Blanche Company purchased 2,900 shares of the capital stock of Maison Blanche Corporation for $290,000 in cash, a certificate for which shares was issued to Maison Blanche Company. No shares, save the 2,910 mentioned above, of the total authorized stock of Maison Blanche Corporation have ever been subscribed to, paid for, or issued.
On the same day January 25, 1951, Mai-son Blanche Company, In Liquidation, sold and delivered to Maison Blanche Corporation all its real property, with improvements, for a consideration of $288,558.62 in cash, together with the assumption by the purchaser of a mortgage indebtedness on the property on which there was owing $2,-837,695.46.
The following day, January 26, 1951, Maison Blanche Company, In Liquidation, conveyed to City Stores Company, a Delaware corporation which owned all of the capital stock of Maison Blanche Company, all of the property of every kind and character remaining in the ownership of Mai-son Blanche Company, and City Stores Company surrendered to the liquidators all the shares of stock in Maison Blanche Company. The purpose of the latter transactions was to wind up the affairs of the liquidation. Included in the assets conveyed to City Stores Company were the 2,910 shares of stock in Maison Blanche Corporation.
*706 By the terms of LSA-R.S. 47:601 every domestic corporation, exercising its charter, shall pay a tax at the rate of one dollar and fifty cents for each one thousand dollars, or major fraction thereof, on the amount of its capital stock, surplus, undivided profits, and borrowed capital “determined as hereinafter provided.” Such tax is levied for the privilege of carrying on or doing business, the exercising of the corporate charter, or the continuance of the charter within this state.
The Collector of Revenue, proceeding under LSA-R.S. 47:604, revalued the common stock of Maison Blanche Corporation for the alleged purpose of determining the true value of the consideration actually received by that corporation for the 2,900 shares of its capital stock issued to Maison Blanche Company, In Liquidation.
The alleged revised value of defendant’s capital stock as assembled from the Collector’s allegations appears:
Assets received by Maison Blanche Corporation:
Cash $ 2,441.38
Land 3,210,000.00
Buildings ■ 2,955,000.00
Total assets received by defendant 6,167,441.38
Consideration therefor:
Assumption of amount due City Stores by Mai-son Blanche Company 45,031.29
Assumption of amount of mortgage due on property 2,813.572.41 2.858.603.70
Actual value of capital stock 3,308,837.68
Less declared value of capital stock 291.000.00
Increased value of capital stock $3,017,837.68
Thus, the Collector is claiming that the value of Maison Blanche Corporation’s capital stock is not represented by the $291,000 received for the 2,910 shares, but rather is represented by the value of the realty it acquired on the same day from Maison Blanche Company, In Liquidation.
The defendant makes no denial of the accuracy of any figures declared upon by the Collector, so the sole point presented by this appeal is whether the Collector had the legal right of examination and revision of the value of the capital stock of defendant which asserted right is strenuously under challenge.
Defendant’s position is that the state franchise tax is based on the amount of the corporation’s capital stock, surplus, undivided profits and borrowed capital, and under LSA-R.S. 12:1 “capital stock” means the aggregate amount at any time of the par value of all allotted shares having a par value; that “surplus” means the excess of assets over all liabilities plus capital stock; and that “assets” means all of a corporation’s property and rights of every kind. It is argued on defendant’s behalf that the total value of the capital stock, where the consideration has been paid in cash and a certificate of a value equal to the amount of cash is issued, the aggregate amount of the cash contributions constitutes the “capital stock.” It is said that when defendant purchased the real estate and improvements thereon, it was required by LSA-R.S. 47 :- 601 as a part of its “borrowed capital” to pay a franchise tax on the amount of the assumed mortgage indebtedness and “that it did so.”
Counsel further say, to quote from their brief:
“The defendant corporation, as appears by the stipulation filed herein, acquired the property in controversy by purchase for money. The property when so purchased became one of the company’s assets and would be used in determining the company’s ‘surplus’ upon which the State would calculate the franchise tax owed to it. The section of the corporate franchise tax act dealing with the determination of a company’s 'surplus’ (R.S. 47:605) provides for the re-evaluation of the company’s property subject, however, to the condition that no asset can be so revalued for an amount ‘in excess of the cost thereof to the taxpayer at the time of acquisition’. It is, no doubt, because of this limitation that the Collector endeavors to put into ‘capital stock’ value which, if it exists, is so clearly ‘surplus.’ *707 Under the provisions of R.S. 47:605 the Collector can re-evaluate the controverted asset if the corporation should ever claim such asset to have a value less than its cost and the Collector will no doubt assert such a right if and when the facts ever warrant it. He should not, however, be permitted to arbitrarily transfer ‘surplus’ to ‘capital stock’. In other words, to calculate the taxes on the basis of what the taxpayer didn’t do rather than on the basis of what it did do because the taxpayer may have reduced the amount of its franchise tax liability through following the course which it did rather than the course which the Collector herein seeks to attribute to it. It is now well established law that a taxpayer is not required to so handle any transaction as to make the maximum contribution to the public fisc.
“We advisedly say that the corporation may have gained a temporary tax liability advantage by the course which it followed because a taxpayer today only sidesteps one tax to collide head-on with another. The amount of tax which the corporation will pay upon the profit realized from the sale of the controverted asset will be determined by the law in effect at the time such profit is realized but it is reasonable to suppose that the profit will be determined upon the basis of the company’s cost as shown by the act of sale transferring the property to it. If, as the taxpayer claims, that value is determined by the purchase price, a larger profit will be realized upon the sale and hence a greater income tax will be paid.
“Inasmuch as the franchise tax of a corporation is imposed upon both its capital stock and its surplus the Collector, if he be permitted to increase the value of this taxpayer’s capital stock, may very well tax this value twice for the reason that the company’s surplus must be determined by ascertaining the ‘excess of assets over all liabilities plus capital stock’. It may be argued that this could not happen because the Collector in redetermining ‘surplus’ under 47:605 cannot revalue ‘any asset in excess of the cost thereof to the taxpayer at the time of acquisition’. This does not answer the question, however, because the surplus and undivided profits are deemed to have such value as is reflected on the books of the corporation and the corporation may at any time revalue its assets, for the purpose of having its books accurately reflect its surplus, to include unrealized appreciation in the value of its assets even though it is not permitted to use that part of its surplus for the paying of dividends (R.S. 12:26).
“Further, if the Collector be maintained in his contention that he has a right to disregard the price stated in the act of sale he would be subject to no restraint in revaluing the asset for determining surplus under 47:605.
“For the foregoing reasons we submit that if the transactions referred to in the stipulations filed herein are given effect according to their tenor the demand made by the Collector herein must be rejected for the reason that the Collector has no right, under R.S. 47:-604, to redetermine the value of property purchased by the corporation for the purpose of increasing the value of the company’s capital stock because under the definitions of the general corporation law (R.S. 12:1) any excess value so found to exist could only be surplus and would be controlled by R.S. 47:605. The Collector has not undertaken to make any revaluation under R.S. 47:-605 and asserts no such right in this proceeding.”
These arguments make no impression for the reason it clearly appears that all the Collector has done is to look behind the form of the transactions between Maison Blanche Corporation and Maison Blanche *708 Company, In Liquidation, and ascertain the consideration actually received for the stock issued for an ostensible cash consideration of $291,000. The same day the stock was paid for and issued, the real property was conveyed for a cash consideration of $288,-558.62, plus the assumption of the mortgage. It is obvious the cash portion of the purchase price was paid out of the avails of the stock subscriptions for the 2,910 shares, as it is conceded defendant issued no other stock and consequently had no other assets or sources from which payment for the property could have been made.
The course pursued by defendant was patently a maneuver to obtain a tax liability advantage. If a corporation for the purpose of escaping franchise taxes is permitted by judicial sanction to use the expedient of issuing its stock to a person for cash and then to coincidentally acquire from that person property worth many times more for a consideration less than the amount of the stock subscription, there would result substantial losses to the State and a frustration of the franchise tax statute. For instance, a person could subscribe at par from a corporation capitalized at $1,000 ten shares of stock having a par value of $100 each and then immediately sell to the corporation physical assets worth $1,000,000 for a $1,000 cash consideration. If what the defendant contends is valid, then the net result would be that the million dollar corporation would pay only a nominal franchise tax based on capital stock with a book value of $1,000, notwithstanding its true value is the equal of the value of the property acquired. Such a device should not be countenanced.
The Collector had the right to seek the substance of the transaction rather than its mere form, the former being controlling in the matter of establishing tax liability.
The United States Supreme Court in the case of Weiss v. Stearn, 1924, 265 U.S. 242, 44 S.Ct. 490, 492, 68 L.Ed. 1001, stated the rule of substance vs. form as follows:
“ * * * Questions of taxation must be determined by viewing what was actually done, rather than the declared purpose of the participants, and when applying the provisions of the Sixteenth Amendment and income laws enacted thereunder we must regard matters of substance and not mere form.”
In the leading case of Gregory v. Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, 268, 79 L.Ed. 596, the United States Supreme Court looked through the form of a statutory reorganization to the substance of the transaction and applying the well-accepted rule of substance vs. form held:
“In these circumstances, the facts speak for themselves and are susceptible of but one interpretation. The whole undertaking, though conducted according to the terms of subdivision (B), wás in fact an elaborate and devious form of conveyance masquerading as a corporate reorganization, and nothing else. The rule which excludes from consideration the motive of tax avoidance is not pertinent to the situation, because the transaction upon its face lies outside the plain intent of the statute. To hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose.”
In Griffiths v. Helvering, 1939, 308 U.S. 355, 60 S.Ct. 277, 278, 84 L.Ed. 319, affirming a decision of the lower court taxing an individual on a transaction which he effected by using a corporation as a conduit, the Supreme Court stated:
“ * * * Legislative words are not inert, and derive vitality from the obvious purposes at which they are aimed, particularly in the provisions of a tax law * * * . Taxes cannot be escaped ‘by anticipatory arrangements and contracts however skilfully devised * * * by which the fruits are attributed to a different tree from that on which they grew.’ Lucas v. Earl, 281 U.S. 111, 115, 50 S.Ct. 241, 74 L.Ed. 731. * * *”
In another Supreme Court case, Higgins v. Smith, 1940, 308 U.S. 473, 60 S.Ct. 355, *709 357, 84 L.Ed. 406 denying deduction of a loss on a sale to a wholly owned corporation, the Court stated:
“ * * * There is no illusion about the payment of a tax exaction. Each tax, according to a legislative plan, raises funds to carry on government. The purpose here is to tax earnings and profits less expenses and losses. If one or the other factor in any calculation is unreal, it distorts the liability of the particular taxpayer to the detriment or advantage of the entire taxpaying group.”
The United States Supreme Court applying the substance vs. form rule in the case of Commissioner of Internal Revenue v. Court Holding Co., 1945, 324 U.S. 331, 65 S.Ct. 707, 708, 89 L.Ed. 981 said:
“ * * * The incidence of taxation depends upon the substance of a transaction. The tax consequences which arise from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title. Rather, the transaction must be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant. A sale by one person cannot be transformed for tax purposes into a sale by another by using the latter as a conduit through which to pass title. To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress.”
The transaction performed by the taxpayer could not possibly be regarded as an arm’s length transaction. The Circuit Court of Appeals, Seventh Circuit, in the case of Campana Corporation v. Harrison, 7 Cir., 1940, 114 F.2d 400, 408, in defining the term stated:
“A sale at arm’s length connotes a sale between parties with adverse economic interest^. To determine whether a sale between two corporations is at arm’s length, it is necessary to look at the stockholders behind the corporate structures. * * * The Supreme Court has been known to disregard an established corporate entity, Southern Pacific Co. v. Lowe, 247 U.S. 330, 38 S.Ct. 540, 62 L.Ed. 1142; Gulf Oil Corp. v. Lewellyn, 248 U.S. 71, 72, 39 S.Ct. 35, 63 L.Ed. 133, and recent judicial expression severely condemns possible circumventions of tax laws by undue adherence to corporate form, Griffiths v. Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319; Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406. In the last case cited, at page 476 of 308 U.S., at page 357 of 60 S.Ct., 84 L.Ed. 406, the Court emphasized that ‘transactions, which do not vary control or change the flow of economic benefits, are to be dismissed from consideration.’ ”
The disparity between the amount given for the stock and the actual value of the property acquired from the subscriber cannot be treated as surplus, as defendant would have it, and thus made amenable to franchise taxes because of such classification. This appears clear from the language of LSA-R.S. 47:605 which, while providing for the revaluation of the corporation’s property to determine “surplus,” states that no asset can be so revaluated for any amount “in excess of the cost thereof to the taxpayer at the time of acquisition.” So long as the corporation continues in ownership, the disparity is not surplus and it could not be converted into surplus until the sale or other disposition of the property which might never come to pass.
Prior to the advent of Act No. 18 of 1934, as amended by Act No. 10 of the 1st Extra Session of 1935 and also by Act No. 201 of 1946, which became LSA-R.S. 47:604 which was in turn amended by Act No. 444 of 1950, the Collector for the purpose *710 of establishing franchise tax liability had no right of examination and revision of the value of capital stock as reflected on the corporate books. The Collector exercised the right of examination and revision supplied by LSA-R.S. 47:604 which reads in part:
“For the purpose of ascertaining the tax imposed in this Chapter, capital stock, whether having par value or not, shall be deemed to have such value as is reflected on the books of the corporation, subject to examination and revision by the collector, * * *
The Supreme Court in State v. Bisso Realty & Investment Co., Inc., 184 La. 579, 167 So. 87, 91, discussed the purpose of the original act which, as amended, is now LSA-R.S. 47:604, as follows:
“A reading of the provisions of Act No. 8 of 1932 also shows that there was not any satisfactory rule prescribed by which the value of ‘capital stock’ represented by shares of par value stock, issued for a consideration other than cash, could be determined. The corporation could issue par value stock having an aggregate value of $5,000 and receive therefor property worth infinitely more than that sum. The secretary of state was obliged to accept the total value of all issued and outstanding stock, as the value of the ‘capital stock,’ although the ‘capital stock’ had a real value of many times more than the aggregate amount of the par value of the shares of stock issued for such consideration. To correct this defect in the law, the Legislature adopted Act No. 18 of 1934, subdivision 3 of section 1 thereof, providing:
“ ‘For the purpose of ascertaining the tax hereby imposed, capital stock, whether having par value or not, shall be deemed to have such value as is reflected on the books of the said corporation, subject to examination and revision by the Secretary of State, from the information contained in the report filed by said corporation, as herein provided, and from any other information obtained by the Secretary of State, but in no event shall such value be less than is shown on the books of the corporation.’ ”
It will be noted there is no material difference, so far as pertinent to a decision of this case, between the quoted language of Act 18 of 1934 and that used in LSA-R.S. 47:604 as it now stands.
We believe the Collector’s examination and revision reflects defendant is liable for the amount of the additional franchise taxes as shown in the tabulation. In the light of the circumstances surrounding the transactions between the parties, we are constrained to say the value of defendant’s capital stock is not the amount paid by the subscribers thereto, but the true value is the amount of the real property acquired by defendant the same day.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that the Collector of Revenue for the State of Louisiana have judgment against Maison Blanche Corporation for additional Louisiana franchise taxes for the years 1952 through 1956 in the principal amount of $21,086.91, plus interest to November 1, 1957, in the amount of $3,794.72, and additional interest as provided by law on $21,-086.91 from November 1, 1957, until paid, plus attorney’s fees of 10 per cent on the total amount of the tax and interest, and for all costs of court including the cost of this appeal.
Reversed and rendered.